1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  JEANNIE ELIZABETH COPELAND,     )   Case No. ED CV-11-01383-SP
                                    )
12              Plaintiff,          )
                                    )
13       v.                         )   MEMORANDUM OPINION AND
                                    )   ORDER
14                                  )
    MICHAEL J. ASTRUE,              )
15  Commissioner of Social Security )
    Administration,                 )
16                                  )
                Defendant.          )
17  _____)

18

19                              **I.**

20                        **INTRODUCTION**

21       On September 9, 2011, plaintiff Jeannie Elizabeth Copeland filed a

22  complaint against defendant Michael J. Astrue, seeking a review of a denial of

23  supplemental security income ("SSI").  Both plaintiff and defendant have

24  consented to proceed for all purposes before the assigned Magistrate Judge

25  pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for

26  adjudication without oral argument.

27       Plaintiff presents three disputed issues for decision:  (1) whether the

28

                                1

1  Administrative Law Judge ("ALJ") properly considered all of the relevant medical
2  evidence; (2) whether the ALJ properly determined that plaintiff did not meet
3  Listing 1.02(A) of 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"); and
4  (3) whether the ALJ properly applied Rule 201.12 of the Medical Vocational
5  Guidelines found at 20 C.F.R. part 404, Subpart P, Appendix 2 ("GRID").
6  Plaintiff's Memorandum in Support of Complaint ("Pl. Mem.") at 2-11;
7  Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 6-
8  14.
9      Having carefully studied, inter alia, the parties's written submissions, the
10  Administrative Record ("AR"), and the decision of the ALJ, the court concludes
11  that, as detailed herein, the ALJ improperly rejected the opinion of Dr. Bunsri
12  Sophon.  Therefore, the court remands this matter to the Commissioner of the
13  Social Security Administration ("Commissioner") in accordance with the
14  principles and instructions enunciated in this Memorandum Opinion and Order.

15                                **II.**

16                **FACTUAL AND PROCEDURAL BACKGROUND**

17      Plaintiff, who was fifty years old on the date of her December 8, 2009
18  administrative hearing, is a high school graduate and completed two years of
19  college. AR at 53, 129.  Her past relevant work includes employment as a
20  production worker at a warehouse.  AR at 46, 54, 154.
21      On December 21, 2007, plaintiff filed an application for SSI, alleging an
22  onset date of October 11, 2006, due to degenerative arthritis in both knees and
23  chronic obstructive pulmonary disease ("COPD").  AR at 148, 153.  Plaintiff
24  injured her knees when she was hit by a car while crossing the street on a bicycle.
25  AR at 41.  The Commissioner denied plaintiff's application initially and upon
26  reconsideration, after which she filed a request for a hearing.  AR at 66-70, 75-79,
27  83.
28

1      On July 24, 2009, plaintiff, represented by counsel, appeared and testified at

2  a hearing before the ALJ.  AR at 49-63.  On December 8, 2009, plaintiff appeared

3  and testified at a second hearing before the ALJ.  AR at 36-48.  At the second

4  hearing, the ALJ also heard testimony from Joseph Mooney, a vocational expert.

5  AR at 46-47.  On January 14, 2010, the ALJ denied plaintiff's claim for benefits.

6  AR at 26-32.

7      Applying the well-known five-step sequential evaluation process, the ALJ

8  found, at step one, that plaintiff did not engage in substantial gainful activity since

9  the application date, December 21, 2007.  AR at 28.

10      At step two, the ALJ found that plaintiff suffered from the following severe

11 impairment:  sprain/strain of bilateral knees.  *Id.*

12      At step three, the ALJ found that plaintiff's impairment did not meet or

13 medically equal one of the listed impairments set forth in the Listings.  *Id.*

14      The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and

15 determined that she has the RFC to perform medium work with the following

16 limitation:  plaintiff should avoid concentrated exposure to extreme cold and

17 vibrations.  *Id.*

18      The ALJ found, at step four, that plaintiff was capable of performing her

19 past relevant work.  AR at 30.

20      Although the ALJ did not need to reach step five, he also determined that,

21 based upon plaintiff's age, education, work experience, and RFC, plaintiff could

22 perform "other jobs that exist in significant numbers in the national economy,"

23

24

25  [1]  Residual functional capacity is what a claimant can do despite existing
    exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,

26  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
    evaluation, the ALJ must proceed to an intermediate step in which the ALJ

27  assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486

28  F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  including housekeeper and cleaner, laundry worker, and kitchen worker.  AR at

2  31.  Consequently, the ALJ concluded that plaintiff did not suffer from a disability

3  as defined by the Social Security Act.  AR at 32.

4        Plaintiff filed a timely request for review of the ALJ's decision, which was

5  denied by the Appeals Council.  AR at 3-6, 22.  The ALJ's decision stands as the

6  final decision of the Commissioner.

### III.

### STANDARD OF REVIEW

9        This court is empowered to review decisions by the Commissioner to deny

10  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

11  Administration must be upheld if they are free of legal error and supported by

12  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

13  (as amended).  But if the court determines that the ALJ's findings are based on

14  legal error or are not supported by substantial evidence in the record, the court

15  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

16  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

17  1144, 1147 (9th Cir. 2001).

18        "Substantial evidence is more than a mere scintilla, but less than a

19  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

20  "relevant evidence which a reasonable person might accept as adequate to support

21  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

22  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

23  finding, the reviewing court must review the administrative record as a whole,

24  "weighing both the evidence that supports and the evidence that detracts from the

25  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

26  affirmed simply by isolating a specific quantum of supporting evidence.'"

27  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

28

1   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

2   the ALJ's decision, the reviewing court "'may not substitute its judgment for that

3   of the ALJ.'"  *Id.*  (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

4   1992)).

5                                            **IV.**

6                                     <u>**DISCUSSION**</u>

7   **A.      <u>The ALJ Failed to Provide Specific and Legitimate Reasons for</u>**

8           **<u>Rejecting the Opinion of an Examining Physician</u>**

9           Plaintiff argues that the ALJ failed to properly consider all of the relevant

10  medical evidence.  Pl. Mem. at 2-8.  Despite plaintiff's characterization of her

11  claim, she appears to be arguing that the ALJ failed to provide specific and

12  legitimate reasons for rejecting the opinion of orthopedic consultative examiner

13  Dr. Bunsri Sophon.  *Id.*

14          In determining whether a claimant has a medically determinable

15  impairment, among the evidence the ALJ considers is medical evidence.  20

16  C.F.R.§§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the

17  regulations distinguish among three types of physicians:  (1) treating physicians;

18  (2) examining physicians; and (3) non-examining physicians.  20 C.F.R.

19  §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

20  1995) (as amended).  "Generally, a treating physician's opinion carries more

21  weight than an examining physician's, and an examining physician's opinion

22  carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246

23  F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-

24  (2).  The opinion of the treating physician is generally given the greatest weight

25  because the treating physician is employed to cure and has a greater opportunity to

26  understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th

27  Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

28

1    Nevertheless, the ALJ is not bound by the opinion of the treating physician.

2  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

3  ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

4  81 F.3d at 830.  If the treating physician's opinion is contradicted by other

5  opinions, the ALJ must provide specific and legitimate reasons supported by

6  substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

7  specific and legitimate reasons supported by substantial evidence in rejecting the

8  contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

9  non-examining physician, standing alone, cannot constitute substantial evidence.

10  *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*

11  *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

12  813, 818 n.7 (9th Cir. 1993).

13    **1.    Medical Opinions**

14      **a.    Treating Physicians**

15    Plaintiff's treatment notes do not reflect a specific treating physician,

16  whether primary care or orthopedic specialist.  *See generally* AR at 199-220, 235-

17  78, 292-95.  Instead, it appears that plaintiff primarily sought treatment from the

18  Riverside Neighborhood Health Center, a clinic managed by the Riverside County

19  Community Health Agency, and the emergency department or the General Ortho

20  Clinic ("Ortho Clinic") at the Riverside County Regional Medical Center.  *See id.*

21    Treatment notes from the Riverside Neighborhood Health Center primarily

22  consist of Physical Assessments performed by certified medical assistants and

23  health surveillance assistants between January and July 2008.  AR at 235-41.

24  During this time, plaintiff complained of problems with her right knee.  *Id.*  On

25  January 22, 2008, an x-ray of the right knee revealed that plaintiff had no

26  suprapatellar effusion, no significant degenerative changes, and no evidence of a

27  fracture or dislocation.  AR at 243.  In April 2008, plaintiff began to arrive at her

28

1  medical appointments in a wheelchair.  AR at 238.  The Administrative Record

2  does not contain any treatment notes from the Riverside Neighborhood Health

3  Center after July 23, 2008.  It does, however, contain a note, dated April 22, 2009,

4  and a Medical Report dated April 27, 2010, from Dr. Ibrahim Sumarli of the

5  Riverside Neighborhood Health Center opining that plaintiff was permanently

6  disabled.[2]  AR at 247, 295.

7        The treatment notes from the Ortho Clinic indicate that numerous doctors

8  treated plaintiff.  *See* AR at 249-50, 255-58.  At these visits, plaintiff consistently

9  complained about right knee pain and an inability to flex it.  AR at 249-58.

10  Doctors determined that she had a reduced range of motion in her knees but no

11  effusion.  *See, e.g.,* AR at 246-50, 257.  On March 18, 2009, upon referral by the

12  Ortho Clinic, a neurologist opined that plaintiff had bilateral knee contracture and

13  she was unable to extend her leg, but she had no convincing neurological deficit.

14  AR at 251-52.  On April 10, 2009, a doctor observed that plaintiff had decreased

15  range of motion and right knee contracture, but opined that she did not have a

16  disability.  AR at 249.

17                **b.      Examining Physicians**

18  *Dr. Bahaa Girgis*

19        Dr. Bahaa Girgis, an internist, examined plaintiff on February 19, 2008.  AR

20  at 221-24.  Dr. Girgis reviewed plaintiff's history and medical records, and

21  conducted a physical examination.  *Id.*  At the examination, Dr. Girgis observed

22  that with regard to her knees, plaintiff had no effusion or deformity, mild crepitus

23  sensation bilateral more on the right knee than the left, no mediolateral or

24

25     [2]   Although Dr. Sumarli wrote that plaintiff was under his care (AR at 247)

26  and certain laboratory reports indicate that he was plaintiff's treating physician
   (*see, e.g.,* AR at 205, 242), none of his treatment notes are included in the

27  Administrative Record.  Further, the Medical Report was issued subsequent to the

28  ALJ's decision.

1   anteroposterior instability, and a decreased range of motion.  AR at 223.  Dr.

2   Girgis also observed that plaintiff had a normal gait.  AR at 224.  Dr. Girgis

3   opined that plaintiff had degenerative joint arthritis of the bilateral knee*, mild

4   crepitus sensation of the knees, and a decreased range of motion.  *Id*.

5        Based on the examination, Dr. Girgis opined that plaintiff could lift/carry

6   fifty pounds occasionally and 25 pounds frequently and stand/walk/sit for six

7   hours out of an eight-hour workday.  *Id.*

8   *Dr. Bunsri Sophon*

9        Dr. Bunsri Sophon, an orthopedic surgeon, examined plaintiff on August

10  17, 2009.  AR at 279-84.  Dr. Sophon reviewed plaintiff's history and medical

11  records, and conducted a physical examination.  *Id.*  Dr. Sophon observed that

12  plaintiff arrived at the examination in a wheelchair and was unable to stand or

13  walk.  AR at 281.  Dr. Sophon also observed that there was no evidence of

14  tenderness, swelling, joint effusion, or crepitation in the knees.  AR at 282.

15  Plaintiff had a decreased range of motion.  *Id*.  Dr. Sophon diagnosed plaintiff

16  with bilateral knee sprain/strain.  AR at 283.  Dr. Sophon opined that plaintiff

17  demonstrated severe flexion contracture of both knees, was unable to stand or

18  walk, and required a wheechair at all times.  *Id.*  Dr. Sophon further opined that

19  plaintiff was capable of lifting and carrying twenty pounds occasionally and ten

20  pounds frequently in a sitting position.  *Id.*

21               **c.      State Agency Physicians**

22  *Dr. Arlene Wong*

23       Dr. Arlene Wong, a state agency physician, issued an RFC assessment on

24  February 27, 2008.  AR at 227-31.  Dr. Wong opined that plaintiff: could lift/carry

25  fifty pounds occasionally and twenty-five pounds frequently; and could

26  stand/walk/sit six hours in an eight-hour day.  AR at 228.

27

28

1  *Dr. E. Grain and Dr. P. Boetcher*

2      Dr. E. Garin and Dr. P. Boetcher, state agency physicians, issued case

3  analyses affirming the RFC.  AR at 244-46.

4                **d.    Subsequent Medical Findings[3]**

5      In a Medical Report dated April 27, 2010, Dr. Sumarli indicated that

6  plaintiff had right knee contracture and was permanently unable to work at her

7  past job.  AR at 295.

8      On November 15, 2010, Dr. Richard A. Mitchell conducted an MRI exam of

9  plaintiff's right knee.  AR at 21.  Dr. Mitchell stated that it was a suboptimal

10  examination due to persistent flexion and poor positioning.  *Id.*  He noted that the

11  cruciate and collateral ligaments were intact, there were no significant effusions,

12  and the menisci appeared to be intact.  *Id.*  Dr. Mitchell observed some joint space

13  narrowing and some sharpening of the tibial spines and early degenerative

14  remodeling.  *Id.*  Dr. Mitchell opined that:  there was evidence of mild

15  degenerative osteoarthritis; there was focus of subchondral osteochondrosis or

16  possibly reflection of chondromalacia patellae involving the medial aspect of the

17  lateral facet; and the study was otherwise within normal limits.  *Id.*

18

19

20

21

22

_____

23   [3]   Plaintiff submitted additional evidence to the Appeals Council (AR at 7, 21,

24  194), which the reviewing court may review if made a part of the record.  *See, e.g.,*
*Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Penny v. Sullivan*, 2 F.3d

25  953, 957 n.7 (9th Cir. 1993).  *But see* 20 C.F.R. §§ 404.970(b), 416.1470(b) ("[I]f

26  new and material evidence is submitted, the Appeals Council shall consider the
additional evidence only where it relates to the period on or before the date of the

27  [ALJ] hearing decision.").  Although this court briefly discusses the subsequent

28  medical evidence, it does not affect the decision.

1

**2.     The ALJ's Findings**

2    Here, the ALJ concluded that plaintiff had the RFC to perform medium

3   work,[4] but should avoid concentrated exposure to extreme cold and vibrations.

4   AR at 28.  In reaching that determination, the ALJ discussed plaintiff's medical

5   records, rejected Dr. Sophon's opinion, and appeared to give great weight to the

6   opinion of Dr. Girgis.[5]  AR at 29-30.

7    To the extent that plaintiff contends that the ALJ simply misinterpreted the

8   evidence, her claim fails.  "Where evidence is susceptible to more than one

9   rational interpretation," the court must uphold the ALJ's decision. *Burch v.*

10  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

11    But the ALJ did err because he failed to provide specific and legitimate

12  reasons supported by substantial evidence for rejecting Dr. Sophon's opinion.  *See*

13  *Lester*, 81 F.3d at 830-31.  The ALJ rejected Dr. Sophon's opinion on the basis

14  that the "excessive limitations" he imposed were "unfounded."  AR at 30.

15  Specifically, the ALJ stated "[t]he diagnosis offered for those excessive limitations

16  is nothing more than knee sprains." *Id.*  In other words, the diagnosis and

17  functional limitations were inconsistent.

18    Although, on its face, the ALJ's reason may appear specific and legitimate,

19  it is not.  The ALJ did not state that the limitations were unsupported by the record

20

21    [4]   "Medium work involves lifting no more than 50 pounds at a time with

22  frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R.
§§ 404.1567(c),  416.967(c).

23

24    [5]   Although the ALJ did not discuss the opinions of the State Agency

physicians or Dr. Sumarli in his decision, the ALJ is not required to "discuss every

25  piece of evidence" so long as the decision was supported by substantial evidence.

26  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Vincent ex*

*rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citing *Cotter v.*

27  *Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  The ALJ must only explain why

28  "significant probative evidence has been rejected." *Vincent*, 739 F.2d at 1395.

1  as a whole, the medical evidence, or Dr. Sophon's findings, all which may be

2  specific and legitimate reasons. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th

3  Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory,

4  brief, and supported by the record as a whole, or by objective medical findings);

5  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept

6  the opinion of any physician . . . if that opinion is is brief, conclusory, and

7  inadequately supported by clinical findings."). Instead, the ALJ, without

8  considering Dr. Sophon's underlying findings, concluded it was not possible for a

9  knee sprain diagnosis to require the limitations imposed by Dr. Sophon. AR at 30.

10  In other words, the ALJ improperly substituted his own interpretation of the knee

11  sprain *diagnosis* for that of Dr. Sophon's opinion of the medical findings. *Tackett*

12  *v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding it inappropriate for the

13  ALJ to substitute his own opinion for that of a treating physician); *see also Rohan*

14  *v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (an ALJ should not "succumb[] to the

15  temptation to play doctor and make [his] own independent medical findings").

16  Accordingly, the ALJ erred because he failed to provide specific and legitimate

17  reasons for discounting Dr. Sophon's opinion.

18       Although there are few objective medical findings, the court also notes that

19  the record is not bereft of evidence supporting plaintiff's claims. *See Andrews v.*

20  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (it is the duty of the ALJ to resolve

21  conflicting medical evidence). In reaching his conclusion, the ALJ relied greatly

22  on the opinion of Dr. Girgis. *See* AR at 30. But Dr. Girgis conducted his

23  examination and offered his opinion almost two years prior to the ALJ's decision.

24  The medical records show that plaintiff's condition appeared to have increased in

25  severity subsequent to the internal medicine examination. Plaintiff began to use a

26  wheelchair and visit doctors at an increasing frequency complaining of knee pain.

27  *See generally* AR at 235-238, 247-258. While doctors found no neurological

28

1   deficit, they noted that she had bilateral knee contractures and was unable to

2   extend her legs.  AR at 251-52.  Plaintiff testified that Dr. Yost, an orthopedic

3   surgeon, recommended total knee replacement.  AR at 40.  Most recently, on

4   November 5, 2010, Dr. Mitchell conducted an MRI exam of the right knee and

5   noted, among other things, that plaintiff had persistent flexion, which caused the

6   examination to be suboptimal.  AR at 21.  This is among the evidence that must be

7   considered on remand.

8   **B.   Listing 1.02A and GRID**

9        Plaintiff alleges that the ALJ failed to properly determine that she met or

10   equaled Listing 1.02A[6] and failed to properly apply Rule 201.12[7] of the GRID.  Pl.

11   Mem. at 8-11.  Plaintiff claims to have met Listing 1.02A as early as April 10,

12   2008.  AR at 9.

13        Based on the foregoing, the ALJ must first reexamine the medical evidence,

14   specifically including Dr. Sophon's opinion.  This review may change his RFC

15   determination, and may also alter his conclusion regarding whether plaintiff meets

16   or equals Listing 1.02A and whether she is disabled under GRID Rule 201.12.  If

17   the ALJ reaches the same RFC determination, which would signify that plaintiff

18

19   [6]   Listing 1.02A states, in relevant part:

20        Major dysfunction of a joint(s) (due to any cause):  Characterized by gross
        anatomical deformity . . . and chronic joint pain and stiffness with signs of

21        limitation of motion or other abnormal motion of the affected joint(s), and
        findings on appropriate medically acceptable imagining of joint space

22        narrowing, bony destruction, or ankylosis of the affected of the affected

23        joint(s).  With:

24        A.   Involvement of one major peripheral weight-bearing joint . . .
                resulting in inability to ambulate effectively, as defined in 1.00B2b.

25

26   [7]   Rule 201.12 provides that a person of an advanced age with an education
        that does not provide for direct entry into skilled work, whose previous work

27        experience is unskilled, and whose RFC is limited to sedentary is considered

28        disabled.

1  can ambulate effectively, then plaintiff does not meet Listing 1.02A.  Plaintiff
2  would also not be entitled to a disability finding under Rule 201.12 of the Grid
3  because her RFC would not be sedentary.  If the ALJ reaches a different RFC
4  determination, he must reconsider whether plaintiff meets Listing 1.02A or is
5  disabled under GRID Rule 201.12.  This court need not reach these issues at this
6  time.

**V.**

**<u>REMAND IS APPROPRIATE</u>**

9        The decision whether to remand for further proceedings or reverse and
10  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,
11  888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by
12  further proceedings, or where the record has been fully developed, it is appropriate
13  to exercise this discretion to direct an immediate award of benefits.  *See Benecke*
14  *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d
15  1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings
16  turns upon their likely utility).  But where there are outstanding issues that must be
17  resolved before a determination can be made, and it is not clear from the record
18  that the ALJ would be required to find a plaintiff disabled if all the evidence were
19  properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96;
20  *Harman*, 211 F.3d at 1179-80.

21        Here, as set out above, remand is required because the ALJ erred in failing
22  to properly evaluate the opinion Dr. Sophon.  On remand, the ALJ shall reconsider
23  Dr. Sophon's opinion regarding plaintiff's limitations, and either credit his opinion
24  or provide specific and legitimate reasons supported by substantial evidence for
25  rejecting it.  If the ALJ reaches a new RFC determination, the ALJ shall also
26  reconsider whether plaintiff meets a Listing or is disabled under the GRID.  If
27  plaintiff does not meet a Listing or is not disabled under the GRID, the ALJ shall
28

13

1 | then proceed through steps four and five to determine what work, if any, plaintiff

2 | is capable of performing.

3 | **VI.**

4 | **CONCLUSION**

5 |     IT IS THEREFORE ORDERED that Judgment shall be entered

6 | REVERSING the decision of the Commissioner denying benefits, and

7 | REMANDING the matter to the Commissioner for further administrative action

8 | consistent with this decision.

9 |

10 | DATED: July 20, 2012

11 |                                 SHERI PYM
                                  United States Magistrate Judge

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |